# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE SOLUTIONS TEAM, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-cv-1879 ) ) Judge Robert M. Dow, Jr. |
| OAK STREET HEALTH, MSO, LLC, et al., | ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are the motion to dismiss [24] filed by Defendant Oak Street Health, MSO, LLC ("Oak Street"), and the motion to dismiss [28] filed by Defendants Focus Solutions LLC and its owner Bruce Schaumberg. For the reasons set forth below, the motions [24; 28] are granted. Further status hearing set for February 21, 2019 at 9:00 a.m.

**I.    Background[1]**

Plaintiff The Solutions Team, Inc. ("TST" or "Plaintiff") initially filed this lawsuit on March 10, 2017, bringing claims for breach of contract, violations of the Computer Fraud and Abuse Act, and fraud in the inducement against Defendant Oak Street Health, MSO, LLC ("Oak Street"), and bringing claims for tortious interference with a contract, violations of the Computer Fraud and Abuse Act, fraud in the inducement, and breach of fiduciary duty against Defendants Focus Solutions, LLC ("Focus") and Bruce Schaumberg ("Schaumberg"). [See 1.] The Court granted Defendants' motion to dismiss all but one of Plaintiff's claims—the breach of contract

---

[1] For purposes of this motion to dismiss, the Court accepts as true all of Plaintiff'' well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

claim against Oak Street. Plaintiff filed an amended complaint seeking to cure the deficiencies identified by the Court.

Plaintiff alleges that in or around March 2015, Defendants Schaumberg and Focus arranged a meeting and relationship between Defendant Oak Street and Plaintiff. [*Id*. at ¶ 20.] For his role in the arrangement of a business relationship between Oak Street and Plaintiff, Schaumberg and/or Focus demanded and received a commission of $6,750 from Plaintiff. [*Id*. at ¶ 21.] On March 27, 2015, Oak Street entered into a contract with Plaintiff to provide equipment and services to Oak Street. [*Id*. at ¶¶ 23-24.] Generally, under the contract and subsequent proposals, Plaintiff was to store, safeguard, manage and maintain data for Oak Street and provide a viable path for saving and retrieving that data. [*Id*. at ¶ 25.] The initial term of the contract was to run for twenty-four months or until March 27, 2017. [*Id*. at ¶ 27.] The contract also provided for an automatic renewal of the initial term or any subsequent term for a period of forty-eight months if neither party gave notice within thirty days of the end of the existing term. [*Id*. at ¶ 28.] Section 6(a) of the Contract also provided that the term of the contract would automatically renew for forty-eight months upon the execution of any subsequent proposal. [*Id*. at ¶ 30.]

On April 1, 2016, Schaumberg and other representatives of Oak Street participated in a telephone conference hosted by Century Link—one of Plaintiff's competitors—during which the parties discussed replacing Plaintiff and discontinuing use of its services under the relevant contracts between Plaintiff and Oak Street. [*Id*. at ¶ 34.] Yet on April 5, 2016 and May 5, 2016, Oak Street executed proposals for additional equipment and/or services from Plaintiff. [*Id*. at ¶¶ 35-36.]

At some point, Oak Street decided that it wished to terminate its relationship with Plaintiff. However, Oak Street needed the data on Plaintiff's computers to do so. According to Plaintiff,

Defendants conspired to gain the access to Plaintiff's computers and informational systems under false pretenses. Specifically, Plaintiffs allege that Defendants made the following representations regarding their need to access the data:

- During Fall 2016, Oak Street Health, through Keith Forshaw, VP, Information Technology Operations & Enterprise Security, began efforts to get The Solutions Team to permit Focus Solutions and Schaumberg access to the Data stored at The Solutions Team by telling Todd Gooden that access to servers and data would be for the limited purpose of running reports and establishing better connections. [20, at ¶ 43.]

- On and around December 2016, Oak Street Health represented to The Solutions Team that it needed access to the Data for the limited purpose of Focus Solutions designing and running select reports of the Data for Oak Street Health. [*Id.* at ¶ 116.]

- In and around December 2016, Focus Solutions represented that it needed access to the Data for the limited purpose of transitioning some of the Data for use in designing and running reports for Oak Street Health. [*Id.* at ¶ 142.]

- On January 12, 2017, Bruce Schaumberg told The Solutions Team that the Solutions Team needed to improve the time it takes to replicate data between servers within The Solutions Team. He further stated that "at this time, we are only trying to replace the current VPN between TST and CLC to utilize the MPLS. Everything with the clinics will stay the same." At that same time, Schaumberg asked The Solutions Team to grant him access. On January 12, 2017, Keith Forshaw echoed Bruce Schaumberg's email and stated that the priority for access was replacing the "VPN with MPLS between TST and CLC". That same day, Forshaw encouraged Todd Gooden to "just work with Bruce" to satisfy his requests. [*Id.* at ¶¶ 55-57.]

- On September 2, 2016, [ ] Schaumberg individually and with Focus, on behalf of Oak Street Health told The Solutions Team that his access to the data needed to improve including increased speed of data sharing and transfer without any mention that said access was being sought to permit him to remove all data for Oak Street Health. [*Id.* at ¶ 44.]

- On September 6, 2016, Schaumberg through email correspondence to Gooden asked The Solutions Team for assistance in accessing data to permit movement of data from one server to another without any mention that said access was being sought to permit him to remove all data for Oak Street Health. [*Id.* at ¶ 45.]

- On December 27, 2016, Schaumberg contacted Todd Gooden at The Solutions Team about working on the MPLS connection without any mention of taking all

3

data from The Solutions Team servers. He stated that they "finished development on some additional ETL's that will be moving all of the BIN data from Prod to EDW and Edmund is concerned about moving this data over the connection we have." There is no reference of doing any transfer or moving of data from the other three servers maintained by The Solutions Team. [*Id*. at ¶ 49.]

- On January 4, 2017, Bruce Schaumberg, individually and on behalf of Oak Street Health contacted The Solutions Team and requested work to be performed on the MPLS connection between CLS and The Solutions Team. This communication omitted reference to the purpose of this request being to take all Oak Street data from The Solutions Team and sever the connection between the two. [*Id*. at ¶ 50.]

- On January 6, 2017, Bruce Schaumberg, on behalf of Oak Street, contacted The Solutions Team requesting connectivity work on the MPLS server, the same server with related monthly costs of $658.75. In a January 6, 2017, handwritten note, Forshaw repeated the request to allow Focus Solutions to gain access for "MPLS Connection" with no mention of Focus taking all data and disconnecting the electronic connection between Oak Street and The Solutions Team. [*Id*. at ¶¶ 51-52.]

- On January 9, 2017, Schaumberg again requested access to the server from The Solutions Team while omitting reference to the intent to take all data and sever the connection between The Solutions Team and Oak Street. [*Id*. at ¶ 53.]

- On January 15, 2017, Schaumberg, individually and for Focus Solutions and on behalf of Oak Street Health who was on the correspondence with copies to Forshaw, James Chow and Jason Vandeneeden, emailed The Solutions Team's Fowler and Gooden that he needed access just for the purpose of doing a data load from the SQL server without any mention that said access was being requested to permit a removal of all data from The Solutions Team servers. On that same day, Schaumberg and by inclusion on the correspondence, Oak Street, represented that unfettered access was needed by saying, "I do have some work I need to do" without mentioning that the "work" was taking the data from The Solutions Team servers. [*Id*. at ¶¶ 62-63.]

Plaintiff alleges that Defendants knew these statements were false at the time they were made and that Defendants made these statements to induce Plaintiff to give Focus and Schaumberg access to the data on its computers. Without knowledge of Defendants' real purpose for obtaining unrestricted access for Focus and Schaumberg, on or about February 5, 2017, Plaintiff granted Focus and Schaumberg access to its computers. [*Id*. at ¶ 64.] Defendants took the data from Plaintiff and transferred it to Century Link, rendered the remaining files held by Plaintiff

4

functionally inaccessible to it. [*Id*. at ¶ 65.] This had the practical effect of severing the electronic link between Oak Street and Plaintiff. [*Id*.] On February 8, 2017, after facilitating the taking of the data, Oak Street's Chief Technology Officer Jason Van Den Eeden called Plaintiff and stated that Oak Street had acquired the necessary data and was terminating its contract with Plaintiff. [*Id*. at ¶ 67.] Before the Court are Defendants' motions to dismiss the amended complaint.

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### III.     Analysis

#### A.     Computer Fraud and Abuse Act ("CFAA")

The Court previously dismissed Plaintiff's CFAA claims because Plaintiff failed to allege "loss to 1 or more persons during any 1-year period * * * aggregating at least $5,000 in value," as required by 18 U.S.C. § 1030(c)(4)(A)(i)(I). [18, at 23-24.] The Court explained that "Plaintiff fails to allege any 'loss' as defined by the CFAA, much less losses of at least $5,000 in value." [*Id.* at 24.]. Plaintiff again fails to allege sufficient losses to bring claims under Section 1030(c)(4)(A)(i)(I) of the CFAA. The CFAA defines "loss" to mean "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "Purely economic harm unrelated to the computer systems is not covered by" the CFAA's definition of loss. *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009).

Plaintiff argues that is has alleged loss in the form of "consequential damages incurred because of interruption of service." [29, at 3.] Specifically, Plaintiff claims to have suffered damage in the form of (1) $34,140.76 in lost value (*i.e.*, depreciation) of equipment which Plaintiff purchased solely to service Oak Street's needs under the contract and subsequent proposals, and (2) $7,905.00 in lost use of a router that remained dormant after the alleged unauthorized access.[2] However, neither of these claimed "losses" resulted from the interruption of service. Rather, as

---

[2] If Plaintiff alleged that a router remained dormant while it investigated unauthorized access of its computers, such an allegation might establish losses under the CFAA. However, Plaintiff alleges that it purchased the router at issue "due to [the] requirements and demands of Oak Street[.]" [20 (Am. Compl.), at ¶¶ 41-42.] Thus, Plaintiff's allegations indicate that it really is seeking to recover costs that it had incurred to provide the services under the contracts with Oak Street.

noted by Defendants, those harms stemmed from the alleged breach of contract. Thus, those harms are "[p]urely economic harm unrelated to the computer systems is not covered by" the CFAA's definition of loss. *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009); see also *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 998 (N.D. Ill. 2011) (granting motion to dismiss CFAA claim where Plaintiff failed to allege facts "connecting its purported 'loss' to an interruption of service of its computer systems").

Plaintiff also argues that it has alleged loss in the form of stolen proprietary information as well as Plaintiff's data backup technology, which carry a combined value in excess of $5,000. [29, at 4-5.] However, as noted by Defendants, courts consistently have found that such losses do not fit within the CFAA's statutory definition of loss. See, *e.g., SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) (holding that allegations of "losses" caused by the transfer of data to a competitor did not fit within the CFAA's definition of loss and concluding that such economic losses are better addressed under state contract and trade secrets law); *Synthes, Inc. v. Emerge Med., Inc.*, 2014 WL 2616824, at *26 (E.D. Pa. June 11, 2014) ("Notably, a claim for future lost revenue due to the dissemination of trade secrets does not qualify as a 'loss' under the CFAA.").

These cases are consistent with the language and structure of the CFAA. As the court explained in *Resdev, LLC v. Lot Builders Association, Inc.*:

> The CFAA defines "loss" in terms of "any reasonable cost." [18 U.S.C. § 1030(e)(11).] "Cost" ordinarily means an "amount paid or charged for something; price or expenditure." Black's Law Dictionary 371 (8th Ed. 2004). The CFAA's "loss" definition goes on to list costs that are similar in that they are all directly associated with, or with addressing, an unauthorized-computer-access event. Among those costs are: "any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*." 18 U.S.C. § 1030(e)(11) (emphasis added). By use of the term "cost" and its listing potential injuries directly associated with, or with addressing, an unauthorized-computer-access event, the CFAA plainly enumerates a narrow grouping of "loss" distinct

7

> from—and thus excluding—the far greater range of losses that could flow from a violation of the CFAA. [Plaintiff's] position, that "loss" can cover a trade secret's exclusivity value, disregards the ordinary meaning of statutory terms, fails to account for surrounding context, and runs counter to the "*expressio*[ ] *unius* * * *" canon of construction, which translates as "the expression of one implies the exclusion of others." See *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (indicating that *expressio unius* cannon has force "when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.").

2005 WL 1924743, at *4 (M.D. Fla. Aug. 10, 2005). Plaintiff fails to address the reasoning of the court in *Resdev* or in any of the numerous other cases cited by Defendants for the proposition that the CFAA's definition of "loss" does not encompass economic losses stemming from stolen proprietary information. The Court finds those cases persuasive, especially in the absence of any authority to the contrary. Accordingly, Plaintiff's claimed harm stemming from the loss of proprietary information does not constitute a loss as the term is defined by the CFAA.

Finally, Plaintiff argues that it has alleged loss in the form of expenses paid "responding to an offense [and] conducting a damage assessment." Specifically, Plaintiff alleges that it spent at least $1,500.00 in time and labor analyzing its systems and systems contacts. [20 (Am. Compl.), at ¶¶ 111, 136, 162.] While those expenses may constitute "losses" under the CFAA, Plaintiff nonetheless fails to allege losses of *at least $5,000* in value. Because the amended complaint also fails sufficiently to allege the requisite amount of losses to state a claim under the CFAA, the Court grants Defendants' motions to dismiss Plaintiff's CFAA claims.[3]

---

[3] In its amended complaint, Plaintiff also alleges that Defendants violated 18 U.S.C. § 1030(a)(5)(C). With respect to Plaintiff's original complaint, the Court found that Plaintiff abandoned that argument by failing to address Defendants' arguments for dismissal of Plaintiff's CFAA claim based on that provision. [18, at 16 n.5.] In their motions to dismiss Plaintiff's amended complaint, Defendants argue that the Court should strike Plaintiff's allegations with respect to that issue. Because Plaintiff did not raise any argument in opposition to that point, the Court assumes that Plaintiff accepts the dismissal of any claim under 18 U.S.C. § 1030(a)(5)(C).

B.      **Promissory Fraud**

The Court previously dismissed Plaintiff's promissory fraud claims,[4] concluding that Plaintiff failed to satisfy Rule 9(b)'s heightened pleading standard, failed to allege a pattern or scheme to defraud, and failed to allege any injury (among other deficiencies). Defendants again move to dismiss Plaintiff's promissory fraud claims for failure to allege a pattern or scheme to defraud and for failure to allege an injury.

   i.     *Scheme to Defraud*

"[P]romissory fraud, *i.e.*, a false statement of intent regarding future conduct rather than present or past facts, 'is generally not actionable under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud.'" *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) (quoting *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007)). Thus, under Illinois law, "promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Defendants Focus and Schaumberg argue that Plaintiff's promissory fraud claims should be dismissed because Plaintiff again fails to allege a scheme to defraud. Defendants Focus and Schaumberg also argue that Plaintiffs fail to allege ***any*** false statements made by Schaumberg.

In response to Defendants' argument that Plaintiff fails to allege a scheme to defraud, Plaintiff identifies allegations indicating that Defendants represented that their access to Plaintiff's

---

[4] Plaintiff's original complaint brought claims for fraud in the inducement. Because Plaintiff's fraud claims were based on Defendants' alleged representations regarding how they intended to use the information to which Plaintiff provided them access (*i.e.*, statements of intent regarding future conduct), the Court reviewed Plaintiff's fraud in the inducement claims as promissory fraud claims. [18, at 6-7.] The Court does the same again here.

9

data and/or servers was for the limited purpose of running reports and establishing better connections. [20 (Am. Compl.), at ¶¶ 43, 55-57.] Plaintiff also alleges that Defendants made other representations regarding their need to access Plaintiff's data and/or servers, without any mention that said access was being sought to permit the removal of data from Plaintiff's computers. [*Id*. at ¶¶ 44-45, 49-53, 62-63.]

Focus and Schaumberg argue that the latter category of purported misrepresentations are really omissions. Under Illinois law, "the omission or concealment of a material fact when * * * the person has the opportunity and duty to speak also amounts to fraudulent misrepresentation." *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992). Focus and Schaumberg argue that because they had no duty to speak, the alleged omissions do not amount to fraudulent misrepresentations. Because Plaintiff fails to identify any duty to speak on the part of Defendants, the Court agrees that the alleged omissions do not amount to actionable misrepresentations.

That leaves Plaintiff's allegations that Defendants represented that their access to Plaintiff's data and/or servers was for the limited purpose of running reports and establishing better connections. [20, at ¶¶ 43, 55-57.] "As few as 'two broken promises' can amount to a scheme to defraud." *Lane v. Le Brocq*, 2016 WL 5955536, at *6 (N.D. Ill. Oct. 12, 2016) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012)). Here, however, Plaintiff alleges that Defendants made the same representation numerous times. Plaintiffs cannot establish a scheme to defraud merely by alleging that defendants made the same representation multiple times. *Nat'l Painting, Inc. v. PPG Architectural Finishes, Inc.*, 2015 WL 1593008, at *4 (N.D. Ill. Apr. 1, 2015) ("While plaintiff alleges that defendants made the allegedly fraudulent representations multiple times, such an allegation, without more, does not raise plaintiff's claim to an actionable

promissory fraud case." (citing *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 962 (N.D. Ill. 2006))). Plaintiff therefore fails to allege a scheme to defraud.

Even though Oak Street did not raise this argument, the argument applies to Plaintiff's fraud claims against all Defendants. Where one defendant successfully challenges a claim on a ground common to several defendants, the Court has inherent authority to dispose of the claims with respect to other defendants if the plaintiff had an adequate opportunity to respond. *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) ("[W]e have stated that where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the nonmoving defendants, if the plaintiff had an adequate opportunity to argue in opposition." (citing *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986))). The Court exercises that authority here and dismisses Plaintiff's fraud claims (Counts III, VI, X) against all Defendants.

      ii.     *Injury*

Defendants argue that Plaintiff also fails sufficiently to allege any injury caused by the alleged fraud. Although the Court is dismissing Plaintiff's promissory fraud claims for failure to allege a scheme to defraud, for the sake of completeness, the Court also will address Defendants' argument regarding Plaintiff's failure to allege injury. Under Illinois law, "injury from fraud must be more than just damages arising from a breach of contract." *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 711 (N.D. Ill. 2007) (citations omitted). Defendants argue that Plaintiff's fraud claims should be dismissed because Plaintiff fails to allege damages beyond its breach of contract damages. The Court agrees that some of Plaintiff's claimed damages are just damages arising from the alleged breach of contract. For example, the alleged depreciation in the value of equipment that was to be used servicing the contract is really another way to recover

income lost as a result of the alleged breach of contract. The same is true of Plaintiff's alleged losses relating to a dormant router. However, Plaintiff alleges that it spent at least $1,500.00 in time and labor analyzing its systems and systems contacts as a result of Defendants' alleged misconduct.[5] Plaintiff further alleges loss in the form of stolen proprietary information and data backup technology, which carry a combined value in excess of $5,000. The Court therefore denies Defendants' motion to dismiss Plaintiff's promissory fraud claims for failure to allege an injury resulting from the alleged fraud.

Still, the Court dismisses Plaintiff's promissory fraud claims for failure to allege a scheme to defraud. Although the Court will consider any motion for leave to amend Plaintiff may wish to file, the Court questions the basis for Plaintiff's fraud claims in other respects. For example, it is not clear to the Court which of the alleged omissions and/or misrepresentations Plaintiff relied upon in granting Defendants access. Plaintiffs identify numerous reasons Defendants proffered for needing to access Plaintiff's data and/or computers over an extended period of time. Given

---

[5] In their reply, Defendants argued for the first time that Plaintiff failed sufficiently to allege facts establishing that it incurred losses analyzing its systems as a result of Defendants' alleged misconduct. [30, at 8.] Defendants represent that their delay in raising the argument is justified because it has identified a new authority in support of that argument that was decided after Defendants filed their motions. However, *Sargeant v. Maroil Trading Inc.*, 2018 WL 3031841, at *11-12 (S.D. Fla. May 30, 2018), the case cited by Defendants, does not represent a change in the law. To the contrary, that non-binding case involves a straightforward application of general pleading standards. Defendants' failure to raise the argument in its opening brief therefore results in waiver of the argument. *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived." (citations omitted)). Regardless, *Sargeant* is distinguishable. In that case, the Court concluded that the plaintiff failed to allege reasonable costs incurred investigating and otherwise responding to alleged CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis) where the plaintiff did not even allege that he had access to the server at issue and the complaint indicated that a third-party controlled the server. *Sargeant v. Maroil Trading Inc.*, 2018 WL 3031841, at *12 (S.D. Fla. May 30, 2018). Because plaintiff did not allege that he had access to the server at issue, the court questioned why the plaintiff needed to obtain a forensic analyst. *Id*. Here, however, Plaintiff alleges that it expended $1,500 analyzing its systems and system contacts as a result of the unauthorized access and activity. [20 (Am. Compl.), at ¶¶ 111, 136, 162.] The Court sees no reason to find that Plaintiff's expenditure of such modest costs investigating suspected misconduct on its own computers was unreasonable.

that some of the alleged reasons were to the exclusion of others,[6] it is unclear to the Court how Plaintiffs could have relied (much less reasonably relied) on all of the identified representations. Still, if Plaintiff believes it can overcome that hurdle and can allege a scheme to defraud, Plaintiff may move for appropriate relief.

## IV. Conclusion

For the reasons set forth above, the motions to dismiss [24; 28] are granted. Further status hearing set for February 21, 2019 at 9:00 a.m.

Date: February 6, 2019

_____
Robert M. Dow, Jr.
United States District Judge

---

[6] For example, Plaintiff alleges that "Focus Solutions represented that it needed access to the Data *for the limited purpose* of transitioning some of the Data for use in designing and running reports for Oak Street Health." [20, at ¶ 142 (emphasis added).] Yet Plaintiff also alleges that "Schaumberg, individually and for Focus Solutions" stated "that he needed access just for the purpose of doing a data load from the SQL server without any mention that said access was being requested to permit a removal of all data from The Solutions Team servers." [*Id*. at ¶ 62.]

13