**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE SOLUTIONS TEAM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-1879 |
| | ) | |
| OAK STREET HEALTH, MSO, LLC., | ) | Judge Robert M. Dow, Jr. |
| BRUCE SCHAUMBERG, and | ) | |
| CENTURYLINK COMMUNICATIONS, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Defendants' motions to dismiss [83, 84, 86] are granted.

Counts II, III, IV, V, and VI are dismissed.

**I.      Background[1]**

Plaintiff The Solutions Team is in the data-storage business and contracts with companies that generate electronic data for the storage of that data. [67, at ¶¶ 6-7.]  Defendant Oak Street Health ("Oak Street") is a network of primary care doctors' offices that specialize in the healthcare of adults on Medicare. [67, at ¶ 8.]  As part of its business, Oak Street gathers and generates protected health information on its patients, which it stores electronically (*i.e.*, the Data). [*Id.* ¶¶ 9-10.]  Defendant Bruce Schaumberg is the founder of Focus Solutions, which installs and supports software products for electronic records and offers professional IT and consulting services, among other things. [*Id.*, at ¶¶ 11-15.]  In March 2015, Schaumberg arranged a meeting between Oak Street and Plaintiff. [*Id.*, at ¶ 20.]

---

[1] For purposes of ruling on Defendant's motions to dismiss, the Court accepted as true all of Plaintiff's well-pleaded factual allegations and drew all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

On March 27, 2015, Oak Street and Plaintiff entered into a Services Agreement (the "Agreement"), pursuant to which Plaintiff would store and maintain the Data; provide Oak Street with a "viable path for saving and retrieving Data"; and provide equipment and services pursuant subsequent proposals entered into between the parties. [*Id.* at ¶¶ 22-24.] The Agreement provided for an initial two-year term, which was to automatically renew for 48 months if neither party gave notice of termination within thirty-five days of the end of the existing term, or by February 20, 2017. [*Id.* at ¶¶ 26-27; 67-2 at ¶ 6(a).] The Agreement also provides that, "[i]n addition" to the aforementioned cancellation right, the "Term" would automatically renew with respect to "all Services and Products" provided to Oak Street "each time a new Proposal for additional Services or Products is adopted by the Parties." [67-2, at ¶ 6(a).] It also allowed Oak Street to terminate "for its convenience at any time" by giving Plaintiff 90 days written notice. [*Id.* at ¶ 6(c).]

Defendant CenturyLink Communications LLC ("CenturyLink") is an internet service provider that offers IT solutions, hosting, and managed services for business. [67, at ¶ 17.] In early 2016, Oak Street retained CenturyLink to implement an MPLS[2] circuit and provide cloud computing services in conjunction with those provided by Plaintiff. [*Id.* at ¶ 40.] On April 1, 2016, CenturyLink hosted a telephone conference for Schaumberg and other representatives of Oak Street, during which the parties discussed replacing Plaintiff and discontinuing use of its services under the relevant contracts between Plaintiff and Oak Street. [*Id*. at ¶ 33.] On April 5, 2016 and May 5, 2016, Oak Street executed proposals for additional equipment or services or both from Plaintiff. [*Id*. at ¶¶ 34-35.]

---

[2] The second amended complaint does not explain this acronym (nor do the first two complaints), but the Court understands it to mean "Multiprotocol Label Switching" and to describe a particular method of routing data in a telecommunications network.

At some point, Oak Street decided that it wanted to terminate its relationship with Plaintiff and switch its data service provider to CenturyLink. However, Oak Street needed the data on Plaintiff's servers to do so. According to Plaintiff, Defendants conspired to gain the access to Plaintiff's computers and informational systems under false pretenses. Between September 2016 and February 2017, Oak Street and Schaumberg made various requests to Plaintiff, including requests to access data on Plaintiff's system. Plaintiff alleges that Defendants misrepresented the true reason they sought access to the data, *i.e.*, that Oak Street planned to migrate its hosted applications and data away from Plaintiff and to use CenturyLink's services instead. [*Id.*, at ¶ 120.] Plaintiff asserts that Oak Street made a series of representations to Plaintiff (including statements from Schaumberg) and generally claims that Oak Street knew the representations were false "and/or omitted its intent." See [67, at ¶¶ 118, 120]. Plaintiff also that Schaumberg made a series of representations to Plaintiff and knew that they were false "and/or withheld information" about the representations. See [67, at ¶¶ 128-29]. Those two sets of representations are presented without duplication here:

- Keith Forshaw, Oak Street Health's Vice President of Information Technology Operations & Enterprise Security, sought to confirm that The Solutions Team was Oak Street's premier strategic partner for Greenway hosting on August 30, 2019, despite knowing it was planning to migrate Greenway to CenturyLink;
- Forshaw assured The Solutions Team that the requested access was for the limited purpose of Focus Solutions designing and running select reports of the Data for Oak Street;
- On December 27, 2016, Schaumberg contacted Todd Gooden at The Solutions Team about working on the MPLS connection stating they "finished development on some additional ETL's that will be moving all of the BIN data from Prod to EDW and Edmund is concerned about moving this data over the connection we have.";
- On January 4, 2017, Schaumberg contacted The Solutions Team and requested work to be performed on the MPLS connection between CenturyLink and The Solutions Team;
- On January 6, 2017, Schaumberg contacted The Solutions Team requesting connectivity work on the MPLS server;

- In a January 6, 2017 handwritten note, Forshaw requested Focus Solutions be allowed access for "MPLS Connection";
- On January 9, 2017, Schaumberg requested access to the server from The Solutions Team, again omitting reference to the intent to take all Data and sever the connection between The Solutions Team and Oak Street;
- On January 12, 2017, Schaumberg requested two different remote networks to be available on the MPLS Connection between The Solutions Team and CenturyLink datacenters. He stated that "at this time, we are only trying to replace the current VPN between TST and [CenturyLink] to utilize the MPLS. Everything with the clinics will stay the same.";
- On the same date, Schaumberg told The Solutions Team that it needed to improve the time expended on replicating data between servers within The Solutions Team;
- On January 12, 2017, Oak Street, through Forshaw, encouraged The Solutions Team to "just work with Bruce [Schaumberg]" to satisfy his requests and echoed Schaumberg's email stating the priority was replacing the "VPN with MPLS between TST and [CenturyLink].";
- On January 14, 2017, Schaumberg wrote to The Solutions Team requesting The Solutions Team to investigate a slow connection between The Solutions Team and CenturyLink after sending a test file across the networks to assess the ability to take the Data;
- On January 15, 2017, Schaumberg requested that The Solutions Team remove a server access policy that was previously in place for eight months so he could perform a data load. He represented that he needed access to an application hosted by The Solutions Team and a server at The Solutions Team data center;
- Schaumberg claimed, "Extracting, copying and downloading data is specifically why we do access these servers," a manipulation and misrepresentation of the scope of his reporting and processing jobs;
- Schaumberg and Oak Street represented that unfettered access was necessary stating, "I [Schaumberg] do have some work I need to do" without mentioning that the "work" was transferring the Data from The Solutions Team servers;
- Schaumberg did not mention that access was sought to permit him and Oak Street's other service providers, including CenturyLink, to conduct critical testing to measure how much time each database backup would take and/or the speed of file transfers from The Solutions Team to CenturyLink via the MPLS connection in preparation for the February 2017 migration.

See [67, at ¶¶ 118, 120, 128-29]. Plaintiff granted Oak Street access to Oak Street's Data on or about February 5, 2017. [*Id.* at ¶ 124.] Schaumberg allegedly used that access to copy the Data and transfer it from Plaintiff to CenturyLink. [*Id.* at ¶ 124.] On February 10, 2017, Oak Street sent written notice to Plaintiff that, effective March 27, 2017, it was cancelling the Agreement and Proposals. [*Id.* at ¶ 93 & Ex. G.] Oak Street took the position that no further payments were due

because it provided timely notice of termination pursuant to Paragraph 6(a) of the Agreement. [*Id.*] Plaintiff disagrees. [*Id.* at ¶ 96.]

Plaintiff filed its original complaint [1] in this action on March 10, 2017, asserting claims for breach of contract, violations of the Computer Fraud and Abuse Act, and fraudulent inducement against Oak Street, as well as claims for tortious interference with a contract, violations of the Computer Fraud and Abuse Act, fraudulent inducement, and breach of fiduciary duty against Focus Solutions and Bruce Schaumberg. Defendants moved to dismiss the complaint, and this Court granted the motions to dismiss all but Plaintiff's breach of contract claim against Oak Street, without prejudice. [18.] On April 5, 2018, Plaintiff filed its first amended complaint [20] alleging claims for breach of contract, violations of the Computer Fraud and Abuse Act, and fraudulent inducement against Oak Street, and claims for violations of the Computer Fraud and Abuse Act and fraudulent inducement against Focus Solutions and Bruce Schaumberg. Defendants moved to dismiss all counts, and this Court granted the motions to dismiss all but Plaintiff's breach of contract claim against Oak Street without prejudice. See [32].

On October 7, 2019, Plaintiff filed its second amended complaint [67], which alleges breach of contract against Oak Street (Count I), and promissory fraud against Oak Street for its own conduct and for Schaumberg's (assuming he is Oak Street's agent) (Count II). In the alternative, if Schaumberg is not an agent of Oak Street, Plaintiff alleges fraud against Schaumberg individually (Count III), as well as a claim for tortious interference with contract (Count IV). Plaintiff also alleges tortious interference with contract against CenturyLink (Count V). Finally, the Second Amended Complaint alleges civil conspiracy against all Defendants (Count VI).[3] Oak Street moved to dismiss Counts II and VI against it pursuant to Rule 12(b)(6). [84.] Schaumberg

---

[3] The exact nature of the alleged conspiracy is somewhat unclear, as discussed in section III.C.

moved to dismiss Counts III, IV, and VI [86], and CenturyLink moved to dismiss counts V and VI [83], both under the same rule. Those motions to dismiss are now before the Court.

One other disagreement, and a subsequent ruling, are significant to the resolution of the motions to dismiss. As discovery proceeded, a dispute arose over the relationship between Oak Street and Schaumberg. Schaumberg and Oak Street have consistently maintained that Schaumberg acted as an agent for Oak Street. See, *e.g.*, [75 at 13-14.] In the original complaint and first amended complaint, Plaintiff alleged the same thing. [1, at ¶¶ 66-69, 82-85, 96; 20, at ¶¶ 84-88, 103-107, 122.] (In fact, the second amended complaint contains the same allegation. [67, at ¶¶ 118-19.]) But when Oak Street asserted the attorney-client privilege over certain communications that included Schaumberg, Plaintiff argued that discovery had revealed that Schaumberg was not an agent, but an independent contractor, and therefore the privilege did not apply. [91, at 6.]. Magistrate Judge Cummings determined that Oak Street and Schaumberg "had an agency relationship of sufficient substance and character to preserve its attorney-client privilege over documents shared with him." [95, at 5.] Specifically, Judge Cummings noted that "the factual record provided by Oak Street's declarations establishes that Schaumberg acted as Oak Street's agent with respect to its dealings with [Plaintiff]" and that Plaintiff "would be barred from disputing the fact of Schaumberg's agency by its second amended complaint," in which Plaintiff alleges that Schaumberg acted as an agent of Oak Street. [95, at 4 (citing [67, at ¶¶ 119, 118]).

## II.   Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * *

6

claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558.[4] In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

Furthermore, claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard. *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005). Under Rule 9(b), a plaintiff alleging fraud "'must state with particularity the circumstances constituting fraud or

---

[4] As Defendants point out, Plaintiff's response briefs cite several cases that predate the *Twombly/Iqbal* standard. See, *e.g*., [105, at 3-4]. To the extent that Plaintiff's citations suggest applying an outdated or overruled standard—such as the "no set of facts" language in *P.H. Int'l Trading Co. v. Christia Confezioni S.p.A.*, 2005 WL 2420377 (N.D. Ill. Sept. 29, 2005)—the Court declines to follow them.

mistake.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). Ordinarily, the plaintiff "must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Id.* (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)); see also *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (Rule 9(b) requires the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). While providing this broad guidance, "[t]he Seventh Circuit has shied away from a rigid, formulaic approach to Rule 9(b) and noted that '[t]he twin demands of detail and flexibility, though in tension with one another, make sense in light of the competing purposes of the federal rules.'" *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011)).

## III. Analysis

### A. Count II Fraud in the Inducement (Oak Street) and Count III Fraud (Bruce Schaumberg)

Plaintiff brings a fraud in the inducement claim against Oak Street (Count II). Plaintiff also brings a claim labeled only "Fraud" against Schaumberg (Count III), but that claim mirrors Count II and is pled as a fraud in the inducement claim, so the Court treats it as such. (See, *e.g.*, [67] at ¶ 135 (alleging that "[a]s a direct and proximate result of Schaumberg's *fraudulent inducement*, The Solutions Team suffered damages") (emphasis added)). To state a claim for fraud in the inducement, a plaintiff must plead specific facts establishing: (1) a false statement of material fact; (2) by one who knows or believes it to be false; (3) made with the intent to induce action by

another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance. *Benson v. Stafford*, 941 N.E.2d 386, 405 (Ill. App. Ct. 2010); *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980).

The Court has previously noted that the false statements alleged by Plaintiff relate to statements of intent rather than statements regarding present or past facts, and that Illinois law recognizes a cause of action for promissory fraud for false or misleading statements relating to future conduct. See, *e.g.*, [18, at 6], [32, at 9].  Many of the alleged false statements in the second amended complaint are the same as those alleged in prior complaints, though a few new allegations do appear.  Defendants Oak Street and Schaumberg again move to dismiss Plaintiff's fraud claims on three grounds: (1) Defendants' statements of future intent are not actionable as promissory fraud because Plaintiff fails to allege a pattern or scheme to defraud; (2) the second amended complaint does not allege reasonable reliance; and (3) the second amended complaint does not allege an injury caused by fraud.

### 1. Injury

The Court begins with the injury issue because it is the most straightforward.  Defendants argue that Plaintiff has failed to allege any injury beyond damages stemming from the alleged breach of contract.  Plaintiff responds that it alleged two types of injuries: depreciation loss on equipment, and expenditures of time and resources "beyond the scope of those provided for in the Agreement or subsequent Proposals." [97, at 14.]  The Court finds neither argument persuasive.

As this Court has already discussed, "the alleged depreciation in the value of equipment that was to be used servicing the contract is really another way to recover income lost as a result of the alleged breach of contract." [32 at 12-13.]  Plaintiff asserts that the "depreciation losses on equipment purchased … are separate from the damages associated with the breach of contract" but

does not explain *how* they are separate. [97, at 14.]  On the contrary, the two amended complaints themselves suggest that the depreciation losses *are* associated with the (alleged) breach of contract.[5]  Paragraph 74 of the first amended complaint alleges that Plaintiff suffered depreciation losses on equipment purchased for Oak Street that had "lai[n] dormant for 15 months."  Paragraph 97 of the second amended complaint essentially repeats that allegation and does not update the amount of time that has passed.  In essence, the amended complaints allege that since Oak Street stopped making payments under the contract, the equipment has been dormant and suffered depreciation, for which Plaintiff seeks compensation.  Given the timeline and causal chain alleged in the second amended complaint, it remains clear that the depreciation losses flow from the alleged breach of contract.  The relevant paragraph even shows that Plaintiff thought of depreciation as a contract issue.  Paragraph 97 notes that Plaintiff suffered depreciation losses "despite efforts to mitigate."  Mitigation is a requirement for recovering damages in contract claims, not fraud claims.  See, *e.g.*, *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC*, 476 F.3d 436, 440 (7th Cir. 2007) ("[t]he duty to mitigate damages is of course a general contractual duty"); RESTATEMENT (SECOND) OF CONTRACTS § 350 (1981) ("As a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts.")).  Plaintiff's own framing of the issue confirms that the depreciation costs are damages flowing from the alleged breach of contract.  Therefore, those costs cannot constitute an injury for the purposes of pleading a fraud claim. See, *e.g.*, *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 711 (N.D. Ill. 2007) (under Illinois law, "injury from fraud must be more than just damages arising from a breach of contract") (citations omitted).

---

[5] It is not exactly clear what fifteen-month period Plaintiff is referring to.  Plaintiff may mean the time between February 8, 2017, when Oak Street purported to terminated the contract with Plaintiff, and April 5, 2018, when Plaintiff filed of the first amended complaint, though that is only fourteen months.

Next, Plaintiff argues that it suffered losses from performing services "beyond the scope of those provided for in the Agreement or subsequent Proposals." [97, at 14.] The specific services Plaintiff identifies are that Plaintiff "assigned an employee to investigate this backup and restoration issue" reported by Schaumberg ([67, at ¶ 83]), and "added a network card to each server IP address to connect to servers from CenturyLink and provide new IP addresses, and spent time and resources investigating the speed of the MPLS connection ([67, at ¶ 122]). Neither the second amended complaint nor Plaintiff's response briefs explain how these services were beyond the scope of its contracts with Oak Street, especially when the contracts state that Plaintiff would provide support services to Oak Street. For example. the Service Agreement says that Plaintiff would provide the following: "Application Server, Server (SQL License), RDS Server (RDS License), Bandwidth, *Support*, Intrusion Detection System, Managed Firewalls in Data Center." [67-2, at 18] (emphasis added).[6] Furthermore, the original Agreement and subsequent proposals describe "support" in various ways, including: "World-Class Support means you contact us only once to resolve any issue — we take it from there" [67-2, at 11]; [67-3, at 3]; "Our people...[will] sink their teeth into your issues on the first time of asking, and won't let go until it's resolved" [67-2, at 12]; [67-3, at 4]. Considering the obligations described in the contracts that Plaintiff attached to the second amended complaint, it is difficult to see how responding to Defendants' requests and investigating their concerns was beyond the scope of the contracts. And if the services were not beyond the scope of the contract, it is not clear how Plaintiff was injured by performing them. As a result, the facts pled in the second amended complaint are not sufficient to allege that these activities were injuries for the purpose of a fraud claim, and Counts II and III must be dismissed.

---

[6] "When ruling on a motion to dismiss, the court may consider 'documents * * * attached to the complaint, documents * * * central to the complaint and * * * referred to in it, and information that is properly subject to judicial notice.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)).

## 2. Misrepresentations

"[P]romissory fraud, *i.e.*, a false statement of intent regarding future conduct rather than present or past facts, 'is generally not actionable under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud.'" *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) (quoting *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007)). Thus, under Illinois law, "promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy," often referred to as a scheme to defraud. *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). This requirement is an application of the principle that fraud suits should be "based on * * *more than an allegation of a fraudulent promise," in order to avoid the "risk of turning every breach of contract suit into a fraud suit." *Id*. Defendants Oak Street and Schaumberg argue that Plaintiff's fraud claims based on promissory should be dismissed because Plaintiff again fails to allege a scheme to defraud. Defendants also argue that any omissions they made are not actionable.

Plaintiff responds in four ways: (1) arguing that this case is similar to *P.H. Int'l Trading Co. v. Christia Confezioni S.p.A.*, 2005 WL 2420377, at *8 (N.D. Ill. Sept. 29, 2005); (2) arguing that the relevant future intent for promissory fraud is Oak Street's "intent to continue to use [Plaintiff's] services" [97, at 8]; (3) repeating Plaintiff's version of the facts without citing any caselaw but *P.H. Int'l* and asserting that it qualifies as a "scheme" under Illinois law; and (4) arguing that Defendants' omissions qualify as "active concealment." None of these positions establish misrepresentations that allow Plaintiff to state a claim for fraud.

12

First, the only authority Plaintiff cites to argue that Defendants' conduct constitutes a "scheme" for promissory fraud purpose is *P.H. Int'l*, in which the court denied a motion to dismiss promissory fraud claims. 2005 WL 2420377, at *8. But *P.H. Int'l* denied the motion to dismiss under the now-defunct "no set of facts" standard that *Twombly* expressly overruled. 550 U.S. at 563 (the "no set of facts" formulation is "best forgotten as an incomplete, negative gloss on an accepted pleading standard"). This Court cannot deny a motion to dismiss on the basis of a district court case that employed a now-overruled standard, so *P.H. Int'l* does not help Plaintiff establish that it has adequately pled a claim relying on promissory fraud.

Second, the Court turns to the alleged misrepresentations that form the basis of the fraud claim. Defendants make a persuasive (and unrebutted) argument that the allegations in the second amended complaint are insufficient to establish promissory fraud because they do not make out a "scheme," as required by Illinois law. The bulk of the alleged misrepresentations remains the same as the first amended complaint; most assert that Defendants represented that their access to Plaintiff's data or servers was for the limited purpose of running reports and establishing better connections [67 at ¶¶ 54, 5764, 65, 67, 68, 118]. Previously, the Court found those allegations to be the same representation made numerous times. [32, at 10-11]. Plaintiffs cannot establish a scheme to defraud merely by alleging that defendants made the same representation multiple times. *Nat'l Painting, Inc. v. PPG Architectural Finishes, Inc.*, 2015 WL 1593008, at *4 (N.D. Ill. Apr. 1, 2015) ("While plaintiff alleges that defendants made the allegedly fraudulent representations multiple times, such an allegation, without more, does not raise plaintiff's claim to an actionable promissory fraud case.") (citing *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 962 (N.D. Ill. 2006)). Those allegations, standing alone, are still insufficient to allege a scheme to defraud.

But the second amended complaint does add a few allegations, which Oak Street argues are not actionable and do not establish a "scheme" under Illinois law. Those new allegations are:

1) [67, at ¶ 118(a)]: that Keith Forshaw "sought to confirm that [TST] was Oak Street Health's premier strategic partner for Greenway hosting on August 30, 201[6], despite knowing it was planning to migrate Greenway to Century Link[.]"

2) [67, at ¶ 118(j)]: that, on January 14, 2017, Schaumberg asked TST "to investigate a slow connection between [TST] and CenturyLink after sending a test file across the networks to assess the ability to take the Data."

3) [67, at ¶ 118(k)]: that Schaumberg "requested that [TST] remove a server access policy that was previously in place for eight months so he could perform a data load" and "represented that he needed access to an application hosted by [TST] and a server at [TST] data center.")

4) [67, at ¶ 118(l)]: that Schaumberg misrepresented that "[e]xtracting, copying and downloading data is specifically why we do access these servers."

Oak Street argues that none of these alleged misrepresentations are actionable, because they are not misrepresentations, or statements of material fact, or promises of future action or future intent, and because Plaintiff does not allege with specificity that it relied on these statements (much less relied reasonably) to take any action. [85, at 9-13.] Plaintiff appears to concede these points, because its response brief [97] does not respond substantively to any of these arguments. Instead, the response attempts to shift the basis of the promissory fraud claim to Oak Street's "intent to continue to use [Plaintiff's] services." [97, at 8.] But the second amended complaint does not allege any misrepresentations about Oak Street's intent to continue using Plaintiff's services—other than perhaps a vague statement about Plaintiff being a "strategic partner" [67 at ¶ 43] that is not obviously a promise of future conduct or expression of future intent—and certainly does not do so with the particularity required by Rule 9(b). Furthermore, this argument refers to the services Plaintiff was providing *under its contract* with Oak Street, which is another indication that Plaintiff has a contractual dispute with Oak Street, not any fraud claim.

14

The final point on misrepresentations is a dispute over whether Oak Street and Schaumberg made actionable omissions. Under Illinois law, "the omission or concealment of a material fact when * * * the person has the opportunity and duty to speak also amounts to fraudulent misrepresentation." *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992). This Court previously found that the alleged omissions did not amount to actionable misrepresentations because Plaintiff failed to identify any duty to speak on the part of Defendants. [32, at 10.] The second amended complaint asserts no such duty either, but Plaintiff's response brief argues that a duty to speak arose because Oak Street and Schaumberg "remained silent regarding material facts and used deceptive conduct and suppressed material facts" [97, at 11], citing *Heider v. Leewards Creative Crafts, Inc.,* 613 N.E.2d 805, 814 (Ill. App. Ct. 1993). Though the quoted portion of *Heider* deals with a claim of fraudulent concealment,[7] Plaintiff denies that it is alleging any fraudulent concealment. [97, at 11.]

Because Plaintiff is not pursuing a fraudulent concealment claim, the purpose of citing *Heider* for its discussion of fraudulent concealment is not clear, and Plaintiff does not explain how the quoted passage—or any other part of *Heider*—applies to the promissory fraud issue in its fraud in the inducement claims. Furthermore, the case is distinguishable. *Heider* dealt with a property seller's (misleading) response to a buyer's inquiry about a latent defect in a building. *Heider*, 613 N.E.2d at 814. There, the defendant's duty to disclose arose "upon inquiry from plaintiff." *Id.* Even if the property seller's position in *Heider* were analogous to a recipient of services under a contract—and Plaintiff has not explained why that would be true—Plaintiff has not alleged that it

---

[7] The quoted portion is: "[S]ilence accompanied by deceptive conduct or suppression of material facts gives rise to active concealment; it is then the duty of the party which has concealed information to speak. * * * Illinois law supports the notion that fraudulent concealment may be found in the absence of an affirmative misrepresentation. That is, silence accompanied by deceptive conduct results in an act of concealment, and at that point a duty to disclose arises." *Heider*, 613 N.E.2d at 814.

made any inquiries that would give Oak Street a duty to disclose its future plans to not renew the Agreement or to migrate services away from Plaintiff. The Court is not convinced that any doctrine of fraudulent concealment applies to the claims in this case, and even if it did, Plaintiff has not pled that Defendants actively concealed material information. The second amended complaint does not plead that Defendants owed any duty of disclosure to Plaintiff.

In sum, the alleged omissions are not actionable; Plaintiff does not plead a "scheme" establishing promissory fraud; and the second amended complaint fails to plead misrepresentations of material fact sufficient to state a claim for fraud in the inducement against Oak Street and Schaumberg.

### 3. Reasonable Reliance

The reliance element of fraud claims must be pled with particularity. *Prescott v. Argen Corp.*, 2015 WL 94168, at *3 (N.D. Ill. Jan. 6, 2015) ("These allegations, however, omit the particular circumstances of either [plaintiffs'] reliance—*e.g.*, the approximate date of their reliance, the specific documents on which they relied, the specific misstatements within the documents on which they relied, or how any misstatements caused plaintiffs to rely on them."). Oak Street argues that Plaintiff has failed to plead reasonable reliance with particularity for three reasons: (1) failure to plead the dates of reliance or how Plaintiff relied on the statements; (2) failure to link acts of reliance with specific misrepresentations; and (3) failure to plead that any reliance was reasonable. [85, at 14-15.]

The date argument may be dispatched quickly. The second amended complaint includes the dates of the alleged misrepresentations. To the extent that Plaintiff acted in response to the alleged misrepresentation, the Court can reasonably infer that the dates pled are the starting dates

of the reliance; it is not necessary for the complaint to repeat each date when describing Plaintiff's responses to the alleged misrepresentations.

The next point, *how* Plaintiff relied on the alleged misrepresentations, overlaps somewhat with Oak Street's second argument—namely, that Plaintiff failed to connect ats of reliance with specific misrepresentations. Plaintiff does allege generally that it took certain actions in reliance on Defendants' statements, such as establishing new IP addresses and routes between Oak Street and CenturyLink, or investigating network connections and file transfer speeds, but does not link those actions back to specific (alleged) misrepresentations from Oak Street or Schaumberg. Rather, Plaintiff generally asserts that it relied on Oak Street's statements, then shifts to arguing that "[i]t is reasonable to infer that [Plaintiff][8] relied on the existing relationship between it and its customer without knowing Oak Street's plan to migrate its data to CenturyLink." [97, at 12-13.] But even if that is true, it does not help Plaintiff plead the elements of fraud in the inducement. To do so, Plaintiff must plead that it relied on misrepresentations, not on a contract, and Plaintiff does not claim that its contracts with Oak Street or any portion of them are misrepresentations. It seems that Plaintiff merely assumed the contractual relationship would continue, despite the possibility (reflected in the contract terms themselves) that Oak Street could seek to end the agreement without cause, or simply not renew it (see Sections 6(c) and 6(a) of the Agreement, respectively [67-2, at 3]). That is simply not reasonable reliance on a misrepresentation as required to state a fraud in the inducement claim, and Plaintiff's resort to the Agreement again suggests that it has a contractual claim, rather than any fraud claim.

---

[8] The original sentence reads "Oak Street" here, but the Court believes that to be a mistake; it does not make sense to write that Oak Street relied on its contractual relationship with Oak Street. Rather, the Court infers that Plaintiff intended to write that *Plaintiff* relied on its contractual relationship with Oak Street.

**B.** **Count IV Tortious Interference with Contract (Bruce Schaumberg), and Count V Tortious Interference with Contract (CenturyLink)**

Plaintiff brings claims for tortious interference with a contract (Counts IV and V) against Schaumberg and CenturyLink. To state a claim of tortious interference with a contract, a plaintiff must plead (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages. *Dopkeen v. Whitaker*, 926 N.E.2d 794, 797 (Ill. App. Ct. 2010).

**1.** **CenturyLink**

CenturyLink argues that Plaintiff failed to allege that it had knowledge of a contract between Plaintiff and Oak Street or that it induced any breach of that contract. Beginning with the knowledge point, Plaintiff argues that it is not required to plead knowledge with specificity, as knowledge may be alleged generally under Federal Rule of Civil Procedure 9(b). That may be true, but the second amended complaint does not even allege knowledge generally. There is no allegation that CenturyLink was aware of any of the contracts between Plaintiff and Oak Street; rather, Plaintiff alleges that it "had a reasonable expectation of continuing its business relationship with Oak Street" and that "CenturyLink knew of this expectancy." [67, at ¶¶ 147-48.] A business expectancy is not a contract, and while the Court must make reasonable inferences in Plaintiff's favor, it may not substitute into the complaint different words that stand for different legal concepts. Despite discussing the Agreement and Proposals several times, the second amended complaint simply does not allege that CenturyLink was aware of any of them.

Turning to the fourth element of tortious interference with contract, inducement, Plaintiff argues that it alleged intentional and unjustified inducement of a breach of contract with the claim

18

that CenturyLink "facilitat[ed] Oak Street Health's migration to CenturyLink." [67, at ¶ 149.] Plaintiff expands on this argument by listing specific actions CenturyLink took to assist the transfer of data from Plaintiff to CenturyLink. See [96, at 6-8.] The problem with Plaintiff's position is that CenturyLink's actions may have aided Oak Street in (allegedly) breaching a contract, but none of them constituted persuading, encouraging, or inciting Oak Street to breach any contract. See *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 2012 WL 4932845, at *6 (N.D. Ill. Oct. 16, 2012) ("Establishing inducement, in the context of a claim for tortious interference with a contract, requires some active persuasion, encouragement, or inciting.") (citing *In re Estate of Albergo,* 656 N.E.2d 97, 103–04 (Ill. App. Ct. 1995)); see also *Sysco Corp. v. Katz*, 2013 WL 5519411, at *7 (N.D. Ill. Oct. 3, 2013) (dismissing tortious interference with contract claim because plaintiff did not allege facts suggesting defendant's "active persuasion or encouragement in inducing" a breach of contract). The second amended complaint fails to allege that CenturyLink induced Oak Street to breach any contract.

### 2. Schaumberg

The briefs raise two issues related to Count IV, the tortious interference with contract claim against Schaumberg. The first is a matter of agency, and the second a matter of inducement. Beginning with agency, Schaumberg argues that he acted as an agent of Oak Street (see [67, at ¶¶ 16, 118, 119]; [95, at 5]) and, just as in the original complaint, Plaintiff fails to allege that his actions as an agent are not privileged. Plaintiff responds that Count IV is pled in the alternative, noting that paragraph 137 of the second amended complaint begins, "To the extent that Bruce Schaumberg was not an agent of Oak Street Health…." Plaintiff argues that "Schaumberg was treated as any other vendor" by Oak Street and therefore was an independent contractor, not an agent. [98, at 8.]

Plaintiff's brief cites no factual allegations in support of this argument. The Court's review of the complaint identified no factual allegations to support this argument. A conclusory assertion, in the alternative or not, is insufficient to support Plaintiff's claim that Schaumberg was not an agent of Oak Street. As a result, Plaintiff faces the problem that Schaumberg identified: the second amended complaint, like the original complaint, fails to allege that Schaumberg's actions on behalf of Oak Street were not privileged (see [18, at 27-28]), and Count IV must be dismissed.

Turning to the second issue, even if the second amended complaint had adequately addressed agency, it still fails to state a claim for tortious interference with contract against Schaumberg. As a preliminary note, Count IV, like the tortious interference claim against CenturyLink, asserts that Plaintiff "had a reasonable expectation of continuing its business relationship with Oak Street Health for services outlined in the Agreement and all subsequent Proposals" and that "Schaumberg knew of this expectancy." [67, at ¶¶ 138-39.] As discussed previously, a business expectancy is not a contract, and these allegations do not plead any elements required to state a claim for tortious interference with a contract.

Next, Schaumberg adopts CenturyLink's arguments regarding tortious interference [88, at 2], and even if he had not, the inducement portion of the argument applies to Plaintiff's claim against Schaumberg.[9] Furthermore, where one defendant successfully challenges a claim on a ground common to several defendants, the Court has inherent authority to dispose of the claims with respect to other defendants if the plaintiff had an adequate opportunity to respond. *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) ("[W]e have stated that where one defendant succeeds in winning summary judgment on a ground common to several defendants,

---

[9] Despite the inadequacy of the allegations about a business expectancy, the second amended complaint does plead Schaumberg's awareness of at least one contract between Oak Street and Plaintiff. Paragraph 45 asserts that Schaumberg sent an email to Keith Forshaw referring to Plaintiff's contract. [67, at ¶ 45.]

the district court may also grant judgment to the nonmoving defendants, if the plaintiff had an adequate opportunity to argue in opposition.") (citing *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986)).  So the Court now turns to the argument that Schaumberg's actions did not constitute inducement to breach a contract.

The second amended complaint does not plead that Schaumberg induced Oak Street to breach any contract.  It contains no allegations that Schaumberg engaged in "active persuasion, encouragement, or inciting" regarding a breach of contract. *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 2012 WL 4932845, at *6 (N.D. Ill. Oct. 16, 2012).  As with the failed claim against CenturyLink, the second amended complaint alleges only that Schaumberg "facilitat[ed] Oak Street Health's migration to CenturyLink," which is not sufficient to allege that Schaumberg induced Oak Street to breach any contract.  For this reason, too, Count IV is dismissed.

## C.    Count VI Civil Conspiracy

Defendants also argue that Plaintiff fails to state a claim for civil conspiracy.  Illinois law defines civil conspiracy as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 571 (Ill. 1998)).  To state a claim for conspiracy, a plaintiff must allege "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino*, 477 F.3d at 509 (citing *McClure*, 720 N.E.2d at 258); see also *Boothe v. Sherman*, 66 F.Supp.3d 1069, 1078 (N.D. Ill. 2014) (same).  A conspiracy to commit fraud must be pled with particularity under Rule 9(b). *Borsellino v. Goldman Sachs Grp.*,

*Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). "A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994); see also *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012). A conspiracy claim fails if the allegations of the independent cause of action underlying the conspiracy fail. *Coghlan v. Beck*, 984 N.E.2d 132, 151 (Ill. App. Ct. 2013). "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Borsellino*, 477 F.3d at 509 (quoting *Adcock*, 645 N.E.2d at 894).

The Court dismisses the civil conspiracy claim, for several reason. First, as discussed above the Court has determined that Counts II through V must be dismissed, meaning the independent causes of action have failed. As a result, Plaintiffs conspiracy claim also fails. *Coghlan*, 984 N.E.2d at 151; see also *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (2000).

Second, to the extent that the second amended complaint alleges that Oak Street and Schaumberg conspired with each other, the conspiracy claim fails. Schaumberg acted as Oak Street's agent in Oak Street's dealings with Plaintiff (see section III.B.i.), and "Illinois law holds that it is not legally possible to have a conspiracy between an agent * * * and the agent's principal." *Copot v. Stewart Title Guar. Co.*, 2020 WL 1848204, at *6 (N.D. Ill. Apr. 13, 2020) (citing *Buckner*, 694 N.E.2d at 571).

Third, the second amended complaint fails to plead an agreement between Defendants with particularity. To explain this point, the Court must first resolve a dispute over whether and how Rule 9(b) applies to the conspiracy claim in this case. "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations.

22

A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507 (citations omitted). This includes claims for conspiracy to commit fraud. *Id*; see also *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013) (finding that plaintiff failed to plead her conspiracy to commit fraud claim with requisite particularity under Fed. R. Civ. P. 9(b)).

Plaintiff's conspiracy count alleges that Oak Street, Schaumberg, and CenturyLink "conspired and agreed among themselves" to "fraudulently induce [Plaintiff] to grant access to serves at [its] data center," [67, at ¶ 154], and that Defendants "did, in fact, fraudulent induce [Plaintiff] to … allow access to the Data by intentionally misrepresenting material facts regarding the relationship with CenturyLink" [67, at ¶ 155]. And as discussed above, Plaintiff asserted fraudulent inducement claims against Oak Street and Schaumberg. In sum, the conspiracy count is a claim that "sounds in fraud."

But when CenturyLink argued that Plaintiff had not pled the conspiracy claim with particularity (or pled any allegations of fraud against CenturyLink, [83-1, at 10-11]), Plaintiff asserted for the first time that CenturyLink's alleged tortious interference with contract—not any allegation of fraud in the second amended complaint—was the basis for CenturyLink's liability as a co-conspirator. [96, at 8.][10] Plaintiff's brief does not explain why this means Rule 9(b) should not apply, but the Court infers that is the conclusion that Plaintiff draws.

Plaintiff does not explain why Rule 9(b) should not apply to a conspiracy count that Plaintiff twice says is based on fraudulent inducement. See [67, at 154-155]. Plaintiff cites no

---

[10] Plaintiff also cites *P.H. International* for the proposition that a plaintiff does not have to plead a civil conspiracy claim with particularity. 2005 WL 2420377, at *10. But the conspiracy in *P.H. International* was not a conspiracy to commit fraud, see *id.* at *11, so Rule 9(b) did not apply. Furthermore, the case that *P.H. International* cites and which Plaintiff left out, *Walker v. Thompson,* 288 F.3d 1005 (7th Cir. 2002), does not involve a conspiracy to commit fraud either. See *id.* at 1007. The rule Plaintiff cites simply does not apply to the fraud-based conspiracy Plaintiff attempts to allege.

authority stating that Rule 9(b) does not apply when a defendant to a conspiracy claim sounding in fraud is himself not alleged to have committed the fraud. Plaintiff may mean that Rule 9(b) should not apply to the conspiracy count only as it relates to CenturyLink, since CenturyLink is not alleged to have committed fraud. But Plaintiff cites no authority for this proposition either, and the Court is not sure how it could apply Rule 9(b) to allegations about one party to an agreement but not to allegations about that party's alleged co-conspirators. Plaintiff's position is legally unsupported and practically challenging, if not impossible. Indeed, the Court concludes that Rule 9(b) does apply to Plaintiff's conspiracy count, because it sounds in fraud, meaning that it the conspiracy must be pled with specificity.

But the second amended complaint fails this requirement, too. It does not allege "the who, what, when, where, and how" of the conspiracy to commit fraudulent inducement with the level of detail required by Rule 9(b), especially regarding CenturyLink. See *Presser*, 836 F.3d at 776. Indeed, besides the conclusory statement in Paragraph 154 that Defendants "conspired and agreed" with each other, the second amended complaint says almost nothing about agreements between any of the Defendants. Without adequately alleged agreement, the conspiracy claim fails and must be dismissed.

## IV.   Conclusion

For the reasons set forth above, Defendants' motions to dismiss [83, 84, 86] are granted. Counts II, III, IV, V, and VI are dismissed.

Dated: September 21, 2020

_____
Robert M. Dow, Jr.
United States District Judge