IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE SOLUTIONS TEAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 CV 1879 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| OAK STREET HEALTH, MSO, LLC, ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Oak Street Health, MSO, LLC's ("Oak Street") motion to compel production of documents relevant to its counterclaim. (Dckt. #133.) For the reasons set forth below, defendant's motion is granted in part and denied in part.

**I.      RELEVANT BACKGROUND[1]**

Plaintiff The Solutions Team ("TST") is in the data-storage business and contracts with various companies for the storage of electronic data. (Dckt. #67 – Sec. Am. Compl. at ¶¶6-7.) Defendant Oak Street Health ("Oak Street") is a network of primary care doctors' offices that specialize in the healthcare of adults on Medicare. (*Id*. at ¶8.) In its business, Oak Street generates protected health information of its patients ("Patient Data"), which it stores electronically. (*Id*. at ¶¶9-10.)

On March 27, 2015, TST and Oak Street entered into a written services agreement (the "Agreement"), whereby TST agreed to, *inter alia*, store and maintain Oak Street's Patient Data, provide Oak Street with a method to save and retrieve the Patient Data, and provide equipment

---

[1] The Court presumes familiarity with the facts of the case and includes only those facts relevant to the pending motion to compel.

and services pursuant to subsequent "Proposals" entered into between the parties. (Dckt. #67 at ¶¶22-25 & Dckt. #67-2.) The Agreement provided for an initial 24-month term (until March 27, 2017), which would automatically renew for 48 months if neither party gave proper notice of termination near the end of the initial two-year term. (Dckt. #67 at ¶¶26-27.) Section 6(a) of the Agreement also provided as follows:

> In addition, the Term shall automatically review for a new forty-eight (48) month period with respect to all Services and Products provided to [Oak Street] by The Solutions Team each time a new Proposal for additional Services or Products is adopted by the Parties.

(Dckt. #67-2 at 3.) The parties entered into such "Proposals" on March 27, 2015 (contemporaneously with the Agreement), August 27, 2015, April 24, 2016, and May 12, 2016. (Dckt. #67 at ¶¶30-35.) In TST's view, under application of Section 6(a) of the Agreement, the most recent Proposal of May 12, 2016 extended the agreement by 48 months to May 12, 2020. (*Id*. at ¶36.)

According to TST, over the next two years, it continued to provide Patient Data storage and various services to Oak Street, while Oak Street, on the other hand, conspired with another company to take back the Patient Data and transfer storage to the other company. (*See generally* Dckt. #67.) Ultimately, near the end of the *initial* 24-month term of the Agreement, Oak Street informed TST by letter dated February 10, 2017 of its cancellation and nonrenewal of the Agreement/Proposals. (Dckt. #67 at ¶93.)

TST filed this action alleging breach of contract and seeks to recover the damages it incurred for Oak Street's premature termination of the Agreement in advance of the extended end date of May 12, 2020 based on TST's interpretation of Section 6(a).[2] Among other alleged

---

[2] TST's Second Amended Complaint also included claims for fraud, tortious interference, and civil conspiracy. On September 21, 2020, however, Judge Dow granted defendants' motion to dismiss those claims. (Dckt. #130.)

damages, TST alleges that due to Oak Street's actions, "equipment purchased specifically for use and management of Oak Street Health Data and services laid dormant for 15 months causing $34,140.76 of depreciation loss on equipment unused due to the unauthorized access, despite efforts to mitigate." (*Id*. at ¶97.)

In turn, Oak Street has filed a counterclaim for violations of the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq*, (the "Consumer Fraud Act"). (Dckt. #129 at 28-40.) Oak Street's claim for violation of the Consumer Fraud Act is particularly relevant to the instant motion. Oak Street alleges that during the negotiation of the Agreement, TST agreed to an initial 24-month term – as opposed to its usual 36-48-month term – in exchange for higher hosting fees from Oak Street. (*Id*. at ¶¶33-38.) According to Oak Street, however, TST never informed Oak Street that under Section 6(a) of the Agreement, the initial 24-month term was extended to 48 months each time the parties executed a subsequent Proposal, nor did TST ever lower the inflated user fees. (*Id*. at ¶¶40-43.) Instead, TST continued to invoice Oak Street for the inflated user fees that Oak Street agreed to pay in exchange for a 24-month term and Oak Street paid those invoices to the tune of $100,000 in overpayment. (*Id*. at ¶44.) Oak Street alleges that TST's conduct surrounding the term of the Agreement amounts to unfair and deceptive practices under the Consumer Fraud Act and Oak Street seeks a setoff for the overpayments in the event TST is awarded damages on its breach of contract claim. (*Id*. at ¶¶45-50.)

Currently before the Court is Oak Street's motion to compel discovery relevant to its counterclaim. (Dckt. #133.) In its motion, Oak Street seeks an order compelling TST to fully respond to the following requests for production:

3

> **RFP No. 34:** All documents reflecting any disagreement, dispute, or issue you have had with any other customer relating to: (a) the term (i.e. duration) of the service agreement; and/or (b) whether any proposal(s) extended the term of the service agreement.
>
> **RFP No. 45:** All communications (including Documents and recordings of conversations) between you and customers other than Oak Street Health reflecting disputes or disagreements concerning (a) the meaning of the following provision: 'In addition, the Term shall automatically renew for a new forty-eight (48) month period with respect to all Services and Products provided to Client by The Solutions Team each time a new Proposal for additional Services or Products is adopted by the parties'; or (b) whether entering into any proposal(s) caused the term of the service agreement to renew.

(Dckt. #133 at 4-5.) Oak Street maintains that these requests are narrowly tailored to seek information relevant to determine if TST had disagreements with other customers regarding the term and extension of similar agreements under Section 6(a). If it did, Oak Street argues that this would help prove its claim that TST violated the Consumer Fraud Act.

In response, TST argues that Oak Street's requests seek irrelevant information; are overly broad, unduly burdensome, vague, and ambiguous; and improperly seek the confidential and proprietary information and communications of its non-party customers.

## II. ANALYSIS

### A. Standard

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such discovery disputes and do so by adopting a liberal interpretation of the discovery rules. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018). Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ..." Fed.R.Civ.P. 26(b)(1); *see Motorola Sols.,*

*Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter"). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed.R.Civ.P. 26(b)(1).

Nonetheless, "relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26." *Motorola,* 365 F.Supp.3d at 924. In particular:

> the discovery sought must not only be relevant, but it must be 'proportional' to the needs of the case, 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.'

*Id., quoting Lechuga v. Magallanes,* No. MO:16-CV-00269-RAJ-DC, 2017 WL 8181556, at *1 (W.D. Tex. July 7, 2017). Once the moving party has made a preliminary showing that the discovery it seeks is relevant to the case and proportional to the needs of the case, the party opposing discovery has the burden of proving that the requested discovery should be disallowed. *Hansen v. Country Mut. Ins. Co.*, No. 18 CV 244, 2020 WL 5763588, at *2 (N.D.Ill. Sept. 28, 2020) (internal citations and quotations omitted).

### B. RFP Nos. 34 and 45 Seek Relevant Information Under Rule 26[3]

To prevail on its claim for violations of the Consumer Fraud Act, Oak Street must ultimately show "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). The Act allows a party to premise its claim on either deceptive conduct or unfair conduct or, as

---

[3] The Court has considered TST's relevancy objection despite Oak Street's contention that it was waived when TST did not include it in its initial response to RFP No. 34. The Court declines to find waiver for the reasons stated in TST's response brief. (Dckt. #136 at 5.)

5

Oak Street has done here, both. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Conduct is "deceptive if it creates a likelihood of deception or has the capacity to deceive." *Id*. Conduct is "unfair" if it offends public policy, is immoral, unethical, oppressive, or unscrupulous, and/or causes substantial injury to consumers. *Id*. at 647 (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d at 417–18, 266 Ill.Dec. 879, 775 N.E.2d 951 (2002)).

Here, Oak Street seeks information relevant to its counterclaim for violation of the Consumer Fraud Act. As Oak Street explains, if TST had disagreements with other customers regarding the same standard term duration provision of the Agreement, evidence of those disagreements may ultimately prove relevant in determining whether TST engaged in deceptive or unfair conduct here by, for example, causing "substantial injury to consumers." *Robinson,* 775 N.E.2d at 961 (Ill. 2002); *Twyman v. S&M Auto Brokers,* No. 16 C 4182, 2016 WL 6082357, at *6 (N.D.Ill. Oct. 18, 2016) (complaints from non-parties could assist plaintiff in showing that defendants engaged in a pattern and practice of misrepresentations and concealment); *Minter v. Diamond,* No. 15 C 4323, 2017 WL 1862639, at *6-7 (N.D.Ill. May 9, 2017) (evidence of alleged prior misconduct was admissible to show knowledge and intent under Fed.R.Evid. 404(b)). Such evidence also relates to Oak Street's claim that it is entitled to punitive damages. *Geske v. PNY Techs., Inc.,* 503 F. Supp. 3d 687, 710 (N.D.Ill. 2020) (noting that under Illinois law, punitive damages "may be awarded only if the defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is committed with fraud, actual malice ... or when the defendant acts willfully."); *Case v. Town of Cicero,* No. 10 C 7392, 2013 WL 5645780, at *5 (N.D.Ill. Oct. 16, 2013) (intent is relevant to punitive damages).

The Court reiterates that a determination regarding the admissibility and weight of such evidence is for another day. Fed. R. Civ. P. 26(b); *see also Schroeder v. Humana Inc.,* No. 12-C-00137, 2012 WL 4849893, at *2 (E.D.Wis. Oct. 11, 2012) (noting when ruling on a discovery motion that the "issue before the Court…is not the weight of such evidence, but its discoverability."). At this stage of the litigation, the Court "'is only concerned with relevance under Federal Rule of Civil Procedure 26(b)(1), [and] not relevance and admissibility under Federal Rule of Evidence 401.'" *ED&F Cap. Markets Ltd. v. JVMC Holdings Corp.,* No. 18 C 5704, 2020 WL 3469128, at *3 n.2 (N.D.Ill. June 25, 2020), *quoting Laudicina v. City of Crystal Lake,* 328 F.R.D. 510, 519 (N.D.Ill. 2018).

### C. TST Has Not Met its Burden to Show that the Requests Are Overly Broad, Burdensome, or Vague and Ambiguous

Having determined that the requests seek relevant information, the burden shifts to TST to show why the discovery should be disallowed. With one exception discussed below regarding audio recordings, TST has generally failed to meet that burden.

First, Oak Street's requests are not overly broad. Instead, they are targeted specifically at documents related to the term duration provision of the Agreement, which, again, is directly at issue in Oak Street's counterclaim. The Court will, in its discretion, limit the temporal scope of the requests from 2013 (two years prior to the Agreement was executed) through 2017 (the year the Agreement was terminated) to best capture potentially relevant documents. *Thermal Design, Inc. v. American Soc'y of Heating, Refrigerating and Air–Conditioning Engrs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (citation and quotation omitted) ("District judges enjoy broad discretion…in delimiting the scope of discovery in a given case.").

Second, with respect to burden, Oak Street has cited to deposition testimony tending to show that responsive documents would likely be in the hands of TST's CEO – who often

7

handled contract disputes – as opposed to across many custodians. (Dckt. #133 at 7-8; #137 at 4.) TST responds only that it has nationwide customers and a rollover of case managers. It does not, however, dispute Oak Street's contention that the CEO is likely the primary custodian of responsive documents. Nor does TST elaborate as to why a search across multiple custodians, even if required, would be unduly burdensome here. A "party resisting discovery on the basis of undue burden must show with specificity that the discovery requests [at] issue are objectionable." *Annie Oakley Enterprises Inc. v. Amazon.com, Inc.*, No. 119CV01732JMSMJD, 2020 WL 4571742, at *5 (S.D.Ind. Aug. 7, 2020), *aff'd*, No. 1:19-CV-1732-JMS-MJD, 2020 WL 6606428 (S.D.Ind. Nov. 12, 2020); *Belcastro v. United Airlines, Inc.,* No. 17 C 1682, 2019 WL 1651709, at *4 (N.D.Ill. Apr. 17, 2019), *objections overruled,* No. 17 C 1682, 2020 WL 1248343 (N.D.Ill. Mar. 15, 2020) (specific showing required to show undue burden). TST has provided no such specific showing here.

Third, the Court rejects TST's assertion that the requests are vague and ambiguous because Oak Street did not define "dispute," "disagreement," or "issue" or explicitly exclude pre-contract negotiations. "A party responding to a discovery request should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests." *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 679 (D.Kan. 2015). It is abundantly clear that Oak Street is seeking documents related to any disagreements or disputes – under a common sense understanding of the terms – that may have arisen between TST and other customers regarding the term duration provision of the Agreement. Further, in its reply, Oak Street clarified that it is only seeking documents "regarding contract negotiations or documents occurring *after* the execution of a services agreement," thereby mooting TST's objection to producing every singled red-lined version of agreements with customers before an agreement is

even executed. (Dckt. #137 at 6 (emphasis added).) The Court finds no vagueness or ambiguity in the requests as written and clarified.

### D. TST Need Not Produce Audio Recordings At This Time

As briefly mentioned above, Oak Street has asserted a counterclaim that TST violated the Illinois Eavesdropping Act by recording their telephone conversations without Oak Street's permission.[4] (Dckt. #129 at 30-32.) Oak Street assumes that TST likely recorded other customer conversations and thus expanded RFP No. 45 to include audio recordings related to the disputes and disagreements that TST's other customers had regarding the duration and renewal of agreements. TST objects to Oak Street's request for the audio recordings of conversations with its non-party customers as improperly seeking irrelevant and private information and as being disproportionate to the needs of the litigation. (Dckt. #136 at 11-12.)

Although information regarding other customers' disputes and disagreements related to the duration and renewal issues is relevant under Rule 26(b)(1) and therefore discoverable (*supra,* at Section II.B) and the privacy concerns can be addressed (*infra,* at Section II.E), the Court finds that ordering TST to produce these recordings would be disproportionate to the needs of the case. The process that TST would be required to engage in to locate audio recordings concerning these issues – even as hypothesized by Oak Street[5] – is cumbersome and would

---

[4] TST, which maintains that its phone system "automatically records calls for quality assurance and training purposes" (Dckt. #136 at 11), denies that it violated the Eavesdropping Act. (Dckt. #131 at 4-7.)

[5] According to Oak Street, retrieving the recordings would require three steps: (1) TST's chief technical officer would use TST's phone system to sort and filter recordings by client; (2) TST's CEO would then identify the clients involved and search his email for relevant communications; and (3) the chief technical officer would then pull telephone conversations with that client during the relevant time. (Dckt. #137 at 12.) Even if this process would work as Oak Street believes, there would need to be a fourth step: someone would thereafter have to listen to the entirety of each telephone conversation identified to determine if the conversation, in fact, touched on the duration and termination issues in question. There is no telling how many such conversations there would be during the 2013 through 2017 temporal period that the Court has identified.

require a disproportionate effort, particularly given that the Court is ordering TST to produce documents concerning these issues.

### E. TST's Privacy Concerns Can be adequately addressed by the Confidentiality Order

In resolving this motion, the Court has considered TST's concerns regarding the need to protect the privacy and confidential information of TST's non-party customers and it finds that these justifiable concerns will be adequately addressed. As Oak Street points out, not only is there already a confidentiality order in place, (Dckt. #81), but Oak Street has agreed to amend the confidentiality order to allow for a "highly confidential - attorneys' eyes-only designation." These are sufficient protections to allay TST's concerns and safeguard the confidential and highly confidential information of TST's non-party customers.[6] *See, e.g., In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 CV 0864, 2018 WL 6413199, at *2 (N.D. Ill. Dec. 6, 2018) (holding that confidentiality order allowing for confidential and highly confidential designations adequately addresses privacy concerns of third-party).

## CONCLUSION

For the foregoing reasons, Oak Street's motion to compel (Dckt. #133) is granted in part and denied in part. Within seven days of entry of this memorandum opinion and order, the parties shall meet and confer to discuss the language of an amended protective order that would allow for a "highly confidential – attorneys' eyes-only" designation where appropriate to otherwise protect the highly confidential information of TST's customers. The parties shall then

---

[6] In addition to its desire to protect customer information, TST also states generally that its customers have a "contractual right to confidentiality," thereby implying that TST enters into confidentiality agreements with each customer. (Dckt. #136 at 8.) But TST offers no explanation of the nature of any such confidentiality agreements. Furthermore, "the mere existence of a confidentiality agreement is not in itself a valid reason to object to discovery." *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F.Supp.3d 1079, 1087 (N.D.Ill. 2015).

promptly submit the proposed amended protective order to the Court's proposed order e-mail address (proposed_order_cummings@ilnd.uscourts.gov) for entry.  TST shall produce all documents responsive to RFP Nos. 34 and 45 as specified above from 2013 through 2017 within 21 days of the entry of this memorandum opinion and order.


**ENTERED:   July 16, 2021**

**Jeffrey I. Cummings
United States Magistrate Judge**